**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| | : | |
| RAFAEL ENRIQUE HERRERA and MARIA CLARIBEL PEREZ GONZALEZ, | : | Civil Action No. 13-640 (SDW) (MCA) |
| | : | |
| Plaintiffs, | : | |
| | : | **OPINION** |
| v. | : | |
| | : | |
| ERIC H. HOLDER, JR., et al., | : | November 12, 2013 |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

**WIGENTON**, District Judge.

Before the Court is Defendants Eric H. Holder, Jr., Janet Napolitano, the United States Citizenship and Immigration Services ("USCIS"), Alejandro Mayorkas, and John Thompson's (collectively, "Defendants") Motion to Dismiss the Complaint filed by Plaintiffs Rafael Enrique Herrera ("Herrera") and Maria Claribel Perez Gonzalez ("Gonzalez") (collectively, "Plaintiffs") pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331. Venue is proper under 28 U.S.C. § 1391(e). This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, the USCIS' Motion to Dismiss is **GRANTED**.

## I.    FACTUAL HISTORY

Herrera is a 60-year-old native and citizen of the Dominican Republic, who has resided in the United States for more than fourteen years. (Compl. ¶ 10.) Gonzalez is a 40-year-old citizen

of the United States. (*Id.* ¶ 11.)  Plaintiffs were married on June 10, 2005 in Union City, New Jersey, the municipality wherein they currently reside. (*Id.* ¶¶ 11-12.)

On or about December 26, 2005, Gonzalez filed an I-130 Relative Visa Petition on Herrera's behalf. (*Id.* ¶ 13.)  According to Plaintiffs, the USCIS interviewing officer approved the I-130 visa petition on that same day.  (*Id.* ¶ 14.)  On April 30, 2009, however, the USCIS issued a Notice of Intent to Revoke ("NOIR") the approved I-130 petition.  (*Id.* ¶ 17.)  The NOIR explained that the petition was being revoked because Herrera's previous spouse, Carmen Josafina Garcia Herrera ("Mrs. Herrera"), filed a prior I-130 visa petition on his behalf on April 4, 1995.  (*Id.*)  Although initially approved on April 4, 1995, the USCIS ultimately denied Mrs. Herrera's I-130 petition on July 19, 2006. (*Id.*)   According to the NOIR, the denial was due to a consular investigation by the U.S. Embassy in the Dominican Republic, which determined that Herrera married Mrs. Herrera solely to assist Herrera in obtaining permanent resident status. (*Id.*)  This conclusion was grounded in Herrera's admission that he had married Mrs. Herrera "solely for the purpose of entering the United States." (*Id.*)  The NOIR further indicated these findings were based upon Herrera's admission that he never actually met Mrs. Herrera's family and based on interviews with Herrera's neighbors in which they reported that Herrera still lived with Maria Guaba ("Guaba"), his first wife and the mother of his children. (*Id.*)

## II.   PROCEDURAL HISTORY

On July 23, 2009, the USCIS formally revoked Gonzalez's I-130 petition relying on the consular investigation referenced in the NOIR. (Compl. ¶ 18.)  Following Plaintiffs' appeal, the Board of Immigration Appeals ("BIA") upheld the USCIS' revocation on May 6, 2010. (*Id.* ¶ 19.) Plaintiffs filed another I-130 visa petition on Herrera's behalf on June 30, 2010. (*Id.* ¶ 20.)  On or about June 28, 2011, the USCIS issued to Plaintiffs a Notice of Intent to Deny the new petition.

(*Id.* ¶ 21.)  The USCIS issued an official denial of Plaintiffs' petition on October 20, 2011. (*Id.* ¶ 21.)  Plaintiffs appealed, and the BIA issued a decision affirming the USCIS' denial on January 8, 2013. (*Id.* ¶¶ 22-23.)

On January 31, 2013, Plaintiffs filed the instant Complaint in this Court, alleging violations of the Fifth Amendment, the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, the Mandamus Act, 28 U.S.C. § 1361, the Declaratory Judgment Act, 28 U.S.C. § 2201, and the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412. (*Id.* ¶¶ 25-36.)  On April 22, 2013, the Defendants filed the instant Motion to Dismiss.

## III.    LEGAL STANDARD

The adequacy of pleadings is governed by Federal Rule of Civil Procedure 8(a)(2), which requires that complaints allege "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly.*, 550 U.S. at 555 (internal citation omitted); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (stating that "Rule 8 requires a showing, rather than a blanket assertion, of entitlement to relief" (quoting *Twombly*, 550 U.S. at 555 n.3) (internal quotation marks omitted)).

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 233 (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted).  However, "the tenet that a

court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to show "'that the pleader is entitled to relief'" as required by Rule 8(a)(2). *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Fowler v. UPMC Shadyside*, the Third Circuit directed district courts to conduct a two-part analysis. 578 F.3d 203, 210 (2009). First, the court must separate the factual elements from the legal conclusions. *See id.* The court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* at 210-11 (citing *Iqbal*, 556 U.S. at 678). Second, the court must determine if "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 566 U.S. at 679). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Id.* (citing *Phillips,* 515 F.3d at 234-35).

Of particular importance here, "[i]n reviewing the propriety of administrative proceedings . . . the Court may consider at the Rule 12(b)(6) stage the record of administrative actions, opinions, and decisions on which a Plaintiff bases his complaint." *Kerrigan v. Chao*, No. 04-1189, 2004 WL 2397396, at *1 (E.D. Pa. Oct. 26, 2004) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993)).

## III.     DISCUSSION

Although Plaintiffs allege five counts in the Complaint, Plaintiffs essentially request that the Court review the decision of the BIA affirming the USCIS' denial of Plaintiffs' I-130 visa

petition. Under the Administrative Procedure Act ("APA"), the reviewing court must "hold unlawful and set aside agency action, findings, and conclusions [that are] arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with [the] law." 5 U.S.C. § 706 (2)(A). "The scope of review under the arbitrary and capricious standard is narrow, and a court is not to substitute its judgment for that of the agency." *CBS Corp. v. Fed. Commc'ns Comm'n*, 663 F.3d 122, 137 (3d Cir. 2011) (citing *Motor Vehicle Mfrs. Ass'n of U.S., v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (internal quotation marks omitted)). The agency, however, must "articulate a satisfactory explanation for its action[,] including a 'rational connection between the facts found and the choice made.'" *Id.* Generally, an agency's decision is arbitrary and capricious when it "relie[s] on factors outside those Congress intended for consideration, completely fail[s] to consider an important aspect of the problem, or provide[s] an explanation that is contrary to, or implausible in light of, the evidence." *NVE, Inc. v. Dep't of Health and Human Servs.*, 436 F.3d 182, 190 (3d Cir. 2006) (citing *Motor Vehicle Mfrs. Ass'n of U.S.*, 463 U.S. at 43).

The Immigration and Nationality Act (the "Act") explicitly prohibits approval of an I-130 visa petition if the alien had attempted or conspired to wed in order to circumvent the immigration laws. 8 U.S.C. § 1154(c). Specifically, the Act states as follows:

> [N]o petition shall be approved if (1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws, or (2) the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws.

*Id.* Accordingly, any subsequent I-130 visa petition filed on an alien's behalf who previously married to evade immigration laws must be denied, irrespective of whether the alien actually obtained immigration benefits. *See Matter of Tawfik*, 20 I&N Dec. 166, 167 (BIA 1990). In order

to deny an I-130 petition based on such circumstances, the USCIS bears the burden of providing

substantial and probative evidence that the petitioner and the beneficiary married "for the purpose

of evading the immigration laws." 8 U.S.C. § 1154(c). In this context, substantial evidence means

evidence a reasonable mind would find adequate to support the conclusion. *See Smith v. Holder*,

487 F. App'x 731, 733 (3d Cir. 2012).

Here, although Plaintiffs concede that they failed to prove the bona fides of Mr. and Mrs.

Herrera's marriage, Plaintiffs argue that the evidence in Herrera's administrative file falls woefully

short of being substantial and probative evidence of Herrera's entrance into a fraudulent marriage

to evade immigration laws. (*See* Pls.' Br. 3 – 7.) Specifically, Plaintiffs argue that the record

simply shows a lack of Herrera's knowledge of some of the details of Mrs. Herrera's life. (*Id*. 4.)

Plaintiffs also contest the reliability of the Investigative Report issued by a consular of the U.S.

Embassy in the Dominican Republic, which they argue fails to the meet the substantial and

probative evidence test because it consists of multiple levels of hearsay and lacks affidavits and

other signed attestations from the declarant witnesses. (*Id*. 5.) Finally, Plaintiffs argue that the

Investigative Report is inherently unreliable because, while it purports to contain signed

confessions from Herrera and Guaba, Herrera's first wife and the mother of his children with whom

he lived, stating that Herrera married Mrs. Herrera for the sole purpose of entering the United

States as a legal resident, no such signed document(s) are in Herrera's administrative file. (*Id*. at

6-7.)

Defendants maintain that Plaintiffs have not—and cannot—show that Defendants acted

arbitrarily, capriciously, or abused its discretion by determining that Herrera had entered into a

fraudulent marriage. (*See* Defs.' Br. 10.) They point to the Investigative Report, which they argue

1) shows that Herrera had continued to reside as husband and wife in the same household with

Guaba even after his purported marriage to Mrs. Herrera and 2) contains admissions from Herrera that he had married Mrs. Herrera solely to circumvent immigration laws. (*Id*.) Defendants also highlight that Herrera was unable to recite basic information about Mrs. Herrera, and that neighbors identified Guaba as Herrara's wife. Defendants therefore argue that the BIA's denial of Plaintiffs' I-130 visa petition was justified and supported by substantial and probative evidence.

In sum, the record is clear that the BIA neither acted arbitrarily or capriciously nor did it abuse its discretion in affirming the USCIS' denial of Plaintiffs' I-130 visa petition. The BIA's decision is firmly based upon the available evidence. As the BIA explained, in coming to its decision it "reviewed the record of proceedings, including the October 20, 2011, decision of the Field Office Director, the June 30, 2011, Notice of Intent to Deny (NOID), the [Plaintiffs'] response to the NOID, and the [Plaintiffs'] contentions on appeal." (*In re Herrera*, Decision of the Board of Immigration Appeals, File No. A096 709 838, Jan. 8, 2013.) Based on the BIA's review of this material, it reasonably concluded that "the record supports a finding that [Herrera's] prior marriage was entered into for the purpose of evading the immigration laws." *Id*.

Plaintiff's contention that the Investigative Report's utilization of hearsay makes it unreliable is unavailing. Generally, hearsay evidence is admissible in immigration proceedings as long as it is probative and fundamentally fair. *See Cruz v. Attorney General of U.S.*, 134 F. App'x 600, 602 (3d Cir. 2005). The complained of hearsay evidence consists of statements by Herrera's neighbors to the consular investigator and statements by Herrera and Guaba, his first wife. (*See* Pls.' Br. 5.) The statements are probative as they go to the heart of the underlying matter, namely, whether Herrera had entered into a fraudulent marriage to evade immigration laws. Furthermore, reliance on the neighbors' statements is not fundamentally unfair to Plaintiffs because the consular investigator personally interviewed the witnesses and was able to assess their credibility. *See*

7

*Ezeagwuna v. Ashcroft*, 325 F.3d 396, 406 (3d Cir. 2003) (finding hearsay statements inadmissible because the government official "was unable to even evaluate the credibility of the" declarants). Moreover, with respect to the statements of Herrera and Guaba, Plaintiffs have had ample opportunity to offer evidence proving the bona fides of Herrera's marriage to Mrs. Herrera. The Court notes that Plaintiffs readily concede that Herrera carries the burden of proving the bona fides of his marriage to Mrs. Herrera, but has failed to have done so. (Plf.'s Br. 3.) Thus, to the extent that the Investigative Report contained hearsay, the BIA's reliance on it was not in error.

Finally, Plaintiffs' position that the Investigative Report lacks credibility because it does not include Herrera's written confession is without merit. Although the signed confession is apparently missing, when the totality of the evidence is considered, including Herrera's lack of knowledge of basic facts about Mrs. Herrera, statements by neighbors indicating that Herrera continued to cohabit with his first wife after his alleged marriage to Mrs. Herrera, a discrepancy between the address on Herrera's national identification card and the address that Herrera provided, this Court does not find that the BIA abused its discretion in determining that the Investigative Report was credible and persuasive. As previously discussed, so long as the BIA provides a "rational connection between the facts found and the choice made[,]" which was done here, this Court may not "substitute its judgment for that of the agency[.]" *CBS Corp.*, 663 F.3d at 137 (internal quotation marks omitted). Accordingly, this Court finds that the BIA did not act arbitrarily or capriciously in relying on the Investigative Report to affirm the USCIS' denial of Plaintiffs' I-130 petition. Therefore, the Complaint fails to state a basis upon which Plaintiffs are entitled to relief.

## IV. CONCLUSION

For the foregoing reasons, this Court holds that the BIA did not act arbitrarily, capriciously or abuse its discretion in reaching its decision affirming the USCIS' denial of Plaintiffs' I-130 visa petition.  Plaintiffs' Complaint, therefore, is hereby **DISMISSED**[1].

s/ Susan D. Wigenton, U.S.D.J.

cc:      Madeline Cox Arleo, U.S.M.J.
         Parties

---

[1] Because Plaintiffs' APA claim fails, their Fifth Amendment due process claim must also fail. *See Gen. Electric Co. v. Johnson*, 362 F. Supp. 2d. 327, 342 (D.D.C. 2005); *see also Appalachian Power Co. v. Envtl. Prot. Agency*, 579 F.2d 846, 852 n.8 (4th Cir. 1978); *see also* U.S. CONST. amend. V; *see also* 5 U.S.C. § 701 et seq.